51 CCPA
**Application of Noel F. ALBERTSON.**
**Patent Appeal No. 7187.**

United States Court of Customs
and Patent Appeals.

May 21, 1964.

1. Serial No. 21,106, filed April 11, 1960 for 1-[(3-, 2-, and 1-Indolyl)-Lower Alkyl]-

Laurence & Laurence, Washington, D. C. (Dean Laurence, Herbert I. Sherman, Washington, D. C., of counsel), for appellant.

Clarence W. Moore, Washington, D. C. (J. E. Armore, Washington, D. C., of counsel), for the Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH, and ALMOND, Judges.

ALMOND, Judge.

This is an appeal from the decision of the Board of Appeals in which thirteen of the claims in appellant's patent application [1] were refused.

The specification states:

"This invention relates to new 1-[(3-indolyl)-lower-alkyl] tertiary amines, 1-[(2-indolyl)-lower-alkyl] tertiary amines, 1-[1-indolyl)-lower-alkyl] tertiary amines, their acid-addition salts and to intermediates and processes for the preparation thereof.

"The present invention resides in the concept of attaching to the 1-, 2- and 3-positions of indole through an unsubstituted lower-alkylene bridge interposing from three to six carbon atoms certain 1-(azacycloalkanyl) groups or a 1-(4-phenyl-azacycloheptanyl), 3-(3-azabicyclo [3.2] heptanyl) or 3-(1, 8, 8-trimethyl-3-azabicyclo [3.2.1] octanyl) group."

Tertiary Amines and Intermediates and Processes Therefor.

Compound claims were allowed by the examiner, the issue on appeal being limited to whether the claims drawn to the process of preparing certain compounds are patentable.

Representative of the appealed claims is claim 24:

"The process for preparing a compound of formula

where Y represents lower-alkylene of two to seven carbon atoms and interposing from two to five carbon atoms between the indolylmethyl group and the nitrogen atom of the group N=B, and N=B represents a member of the group consisting of 1-(azacyclo-alkanyl) of seven to nine ring atoms, 1-(4-phenyl-azacyclohep-tanyl), 3-(3-azabicyclo[3.2.0] heptanyl) and 3-(1, 8, 8-trimethyl-3-azabicyclo [3.2.1] octanyl) which comprises reacting with an alkali metal aluminum hydride a compound of [sic] having the formula

where Y' represents lower-alkylene of two to six carbon atoms and N=B has the meaning given above."

In essence, the process involves reducing certain of the compounds of allowed claims with alkali metal alumium hydride to produce other compounds, also claimed in the allowed claims.

The Board of Appeals affirmed the rejection predicated on the following references:

Speeter            2,804,462            Aug. 27, 1957
Rice—Journal of Organic Chemistry, Volume 24, pages 1520 to 1523 (1959)
Rice et al.—Journal of American Chemical Society Volume 75, pages 4911 to 4915 (1953)

---

The Speeter reference discloses a process for producing (5-benzyloxy-3-indole) alkyl amines by reduction using, inter alia, lithium aluminum hydride.

The Rice article discusses the preparation of azabicycloalkane compounds from the corresponding dione compounds by reduction using lithium aluminum hydride.

The Rice et al. publication also shows that reduction of azabicyclodione compounds with lithium aluminum hydride.

The references need not be discussed in detail because they relate to considerably different compounds and are relied on only because each one shows the process step of reduction with lithium aluminum hydride as the reducing agent.

The board said:

"As both appellant and the Examiner explain, the processes of the references do not produce the same compounds or result immediately from the same starting materials involved in appellant's claimed process. The described relationship between appellant's reaction products and those of the references is such that on a purely process basis the processes claimed would be directly obvious from the references to a chemist of ordinary skill. Indeed, the reactions involved in the claimed process involve the activities of the same radicals as those of the prior

art reactions, as appellant's counsel conceded at the hearing of this appeal.

"The claimed and reference process involve analogous reactions of a conventional type."

The opinion of the board discusses at some length the decision of this court in In re Larsen, 292 F.2d 531, 49 CCPA 711. The board pointed out that the allowed claims were not considered, stating:

"We have considered only the claims to the process and our consideration extended to a determination of their 'obviousness,' under 35 U.S.C. 103, on a purely process basis. The claims to the 'intermediates' were allowed by the Examiner and are excluded from our consideration."

Appellant contends that all prior adverse cases, including In re Larsen, supra, can be distinguished on the ground that here an unobvious starting material is reacted to make an unobvious product.

Appellant's brief states:

"The prior cases to be distinguished are In re Larsen [292 F.2d 531], 49 CCPA 711, 130 USPQ 209; In re Ross et al. [305 F.2d 878] 49 CCPA 1276, 134 USPQ 320; and In re Surrey et al., 50 CCPA * * * [1336, 319 F.2d 233], 138 USPQ 67. In each of those cases, as well as the instant case, the process claimed could be considered as "the process for preparing X by reacting A with B,' and the prior art references show the 'type' or general reaction applied to different materials."

In none of the prior cases, according to appellant, were both "A" and "X" in the quoted example shown to be unobvious. Here some of the allowed claims are drawn to "A" and others are drawn to "X."

Appellant urges us to follow In re Cavallito et al., 306 F.2d 505, 49 CCPA 1335, where the board was reversed. The analogy is drawn in the following manner by appellant:

"Thus, as in Cavallito, we have a case where a reference, originally cited against both process and product claims, is held not to suggest the product and therefore could not lead one of ordinary skill in the art to utilize the starting materials disclosed in appellant's process to make appellant's novel final product. The other references cited in the instant case, Speeter and Rice et al (I) are even less pertinent than the overcome Rice reference, as shown by the fact they were never even cited against any product claim * * *."

It is appellant's view that the specific reactants in a process "are a vital, significant part of any process," and therefore the "use of an unobvious starting material renders a process unobvious." The process here claimed, appellant contends, is an unobvious species of the generic "type reaction" known to the art.

The solicitor points out that the prior art patent to Speeter "discloses the same reductive step applied to indolyl alkyl tertiary amines which, as pointed out by the examiner * * *, differ from the tertiary amines of the appealed claims with respect to two groups in a manner that does not affect or interfere with the reduction reaction. This, appellant has neither challenged nor denied."

It is the solicitor's contention that "the reaction mechanism involved" is identical with that of the prior art, the materials reduced are "analogous materials to those reacted upon in the prior art" and, since a process is claimed, "it is entirely irrelevant as to whether the starting materials are or are not novel or patentable."

We find no error in the holding below that it would be obvious to reduce the compounds in the manner claimed. It appears that appellant's characterization of the process as "preparing X by reacting A with B" does not accurately portray the process claimed because it implies greater differences than actually exist. We must consider "the differences between the subject matter sought to be patented and the prior art" under 35 U.S.C. § 103. Using appellant's symbols, B is simply a well known reducing agent which will reduce any compound having the characteristic reducible group, and

X is simply reduced A. The change that takes place by reduction has not been shown to be unexpectedly great. In both the prior art and here, the lithium aluminum halide reduces the keto group to hydrocarbon. Even though no one ever produced A before, we are not satisfied that it is unobvious to reduce A with a standard reducing agent to produce reduced A. No reaction conditions are recited in the claims. No manipulative steps are claimed other than what is embodied in the word "reacting," which is used in all of the claims. The results obtained by reacting with alkali metal aluminum hydride are entirely expected and obvious. Only the predicted reduction takes place.

█ We are of the opinion that each statutory class of claims should be considered independently on its own merits. In re Wilke et al., 314 F.2d 558, 50 CCPA 964; In re Adams et al., 316 F.2d 476, 50 CCPA 1185. The fact that the starting materials and the final product are the subject matter of allowed claims does not necessarily indicate that the process employed is patentable. In the instant case, there is no disagreement with the finding below that it would be obvious to react a compound with alkali metal aluminum hydride to perform a reducing step resulting in the reduced starting material.

█ We do not agree with appellant's proposition that the "use of an unobvious starting material renders a process unobvious." Were this true, every step, for example, dissolving or heating, when performed on a new compound would result in a patentable process. We reiterate that all of the evidence must be considered on the "subject matter as a whole," from the viewpoint of one skilled in the art, in the determination of obviousness, and not simply the patentability of one of the starting reactants in a process.

█ In view of the prior art, we see nothing unobvious in reacting the compounds of the allowed claims with a re-

ducing agent to produce the reduced derivatives. See In re Larsen, 292 F.2d 531, 49 CCPA 711.

We do not consider this holding inconsistent with the decision of In re Cavallito et al., supra, relied on by appellants because in that case the court found that the prior art reference relied upon failed to lead one of ordinary skill in the art to carry out the claimed step of "quaternizing."

Accordingly, the decision of the Board of Appeals is affirmed.

Affirmed.

SMITH, Judge (dissenting).

It is with regret that I find it necessary to dissent from the majority opinion and to write what may well be called the third movement in the requiem for the "new use of a known process" provision of 35 U.S.C. § 100(b).[1] The new use provision, as stated in the Patent Act of 1952, had a bright promise and might well have emancipated the patent law from the shackles with which traditional claim forms had enslaved it. With the present decision, I fear that bright promise is dead.

---

1. The first movement will be found in my dissent in In re Larsen, 292 F.2d 531, 49 CCPA 711; the second in my dissent

in In re Hoeksema, 332 F.2d 374, 51 CCPA —— (PA 7050).